IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:13CR106 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| THOMAS SPENCER, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Deborah R. Gilg, United States Attorney and, Keith Becker, DOJ Trial Attorney; Sara Chang, DOJ Trial Attorney; Michael P. Norris, Assistant United States Attorney and defendant, THOMAS SPENCER, and James J. Regan, counsel for defendant, as follows:

## I
## THE PLEA

A. <u>CHARGE(S) & FORFEITURE ALLEGATION(S).</u>

Defendant agrees to plead guilty to Count II of the Second Superseding Indictment. Count II charges Access with Intent to View Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

    1. The United States will move to dismiss Count I at the time of sentencing.

## II
## NATURE OF THE OFFENSE

A. <u>ELEMENTS EXPLAINED.</u>

Defendant understands that the offense to which defendant is pleading guilty has the following elements: 1) The defendant accessed with the intent to view one or more visual depictions of a minor engaged in sexually explicit conduct; 2) The defendant knew the depiction

1

was of a minor engaging in sexually explicit conduct; and 3) The visual depictions were produced with materials that had been shipped, mailed or transported in interstate commerce or by the internet.

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts would be proven by the United States at trial:

"Website A," a.k.a. Pedobook, was a child pornography social networking website whose primary purpose was the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children. "Website A" operated from March of 2012 until December of 2012. The name Pedobook refers to a sexual interest in children. As of December 8, 2012, the site listed over 8,100 members. The rules of the site, which were accessible on the main page to anyone who accessed Pedobook, described it as a tool for communication among pedophiles to discuss their interests and share "content" - content referring to child pornography.

Users could register on Pedobook with a username and a password. Once registered, users could set up a profile that included a picture, personal information, contact information, and other functions such as blogs, uploaded files, web pages, or polls. Many users had a user photo, sometimes called an "avatar," that was in and of itself an image of child pornography. Users could also create a display name associated with their account.

Pedobook contained a section that compiled all files posted by members. Within that section were images and videos. The section contained more than 17,000 images, all of which depicted children. All of those images were accessible to any user who accessed the site, whether registered or not. Those images depicted minor children engaging in sexually explicit conduct with adults or other children, minor children posed while exposing their genitals, or images of child erotica. Most of those images were of prepubescent children. Many of those images depicted infant and toddler-aged children being sexually abused by adults or posed to expose their genitals. The section also contained approximately 120 videos. Videos posted included videos of minor children, some of whom are prepubescent, engaging in sexually explicit conduct with adults or other children.

Pedobook also contained a section for members to set up groups. There were over 300 groups on Pedobook. Any member could start a group. Within a group, members could post images and messages which were visible to all group members. Groups could be open or closed. The vast majority of groups were open. In an open group, all users who access the board, even those who had not registered and logged in with a username and password, could view images and messages posted to the group. In a closed group, messages and images were visible only to group members.

The names and descriptions of all groups on Pedobook were listed and visible to anyone who accessed the site, whether the group was open or closed. The number of members in any given group varied from a handful to dozens to hundreds to over a thousand. Open groups which were accessible to all users essentially functioned as labels or subcategories for postings of distinct types of child pornography on the site. For example, there was a group with over 1,000 members whose group description stated it was for pictures and videos produced only in 2012. That group contained numerous images of infant and toddler aged children whose genitals are exposed and/or are being subjected to sexual abuse. Other open groups on Pedobook were dedicated to, for example: sexually explicit images of kindergarten age girls ages 4-8 and images of infant and toddler aged children being sodomized. Other open groups with more than 100 members included groups dedicated to incest, female pedophiles, boy pedophiles, pedophilic videos with "no limits" - which refers to violent sexual activity; and videos of infant children. Within those groups, the group descriptions and images posted within them were consistent with their group titles. All of those groups contained images of minor children engaging in sexually explicit conduct with adults or other children, or posed to expose their genitals.

Pedobook users utilized advanced technological means in order to undermine law enforcement's attempts to identify them. For example, Pedobook was technically designed to facilitate anonymous communication by its users, whether they were registered or not. Only a user who had installed special software on the user's computer could access Pedobook. That software enabled the communications of Pedobook users to be routed through multiple computers in order prevent communications from being traced back to the users.

Defendant accessed Pedobook on November 25th, December 4th and December 7, 2012. On April 11, 2014, law enforcement searched Defendant's residence in North Las Vegas,

3

Nevada. Preliminary review of his computer revealed child pornography located in Internet Explorer temporary files under username "Tom." Further review revealed that the computer had last accessed child pornography earlier that morning.

A full forensic review was conducted by the Federal Bureau of Investigation. The software program CCleaner, a file eraser was found on Defendant's laptop computer. Despite CCleaner 129 images of child pornography, including eleven images of infants and toddlers engaged in sexually explicit conduct, were located. The software program History Eraser was found on Defendant's cell phone. Recovered from the phone were 33 images of child pornography.

### III
### PENALTIES

A.  Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 10 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count;
4. A term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release; and,
5. Possible ineligibility for certain Federal benefits.

### IV
### AGREEMENT LIMITED TO THE UNITED STATES DEPARTMENT OF JUSTICE AND THE U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Department of Justice and the United States Attorney's Office for the District of Nebraska, and cannot bind any other state or local prosecuting, administrative, or regulatory authorities. The United States Attorney's Office for the District of Nevada will waive prosecution for the Defendant's activity on Pedobook.

# V
# PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS.

**Rule 11(c)(1)(C) Agreement**

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence shall not be less than 48 months of incarceration. The Court retains the discretion to impose any length and conditions of supervised release, fine and restitution as it deems appropriate. Nothing in this provision is intended to provide authority for the Court to depart below any mandatory minimum sentence absent a motion by the government pursuant to 18 U.S.C. § 3553(e).

In the event that the Court rejects this plea agreement pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure, the parties agree that both the defendant and the government may withdraw from the agreement.

B.  ACCEPTANCE OF RESPONSIBILITY.

The government will <u>not</u> recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

C.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and

5

sentence reductions under 18 U.S.C. § 3553, and that the government may oppose any such downward adjustments, departures, and sentence reductions. Any variance is limited by the Rule 11(c)(1)(C) provision referenced above.

D. CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category.

E. FACTUAL BASIS AND RELEVANT CONDUCT INFORMATION.

The parties agree that the facts in the factual basis paragraph of this agreement, if any, are true, and may be considered as relevant conduct under U.S.S.G. §1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

F. PARTIES' RECOMMENDATION REGARDING SENTENCING.

The United States will make a non-binding recommendation that defendant be sentenced to the low end of the advisory guideline range.

## VI

## DEFENDANT WAIVES APPEAL

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement

shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5).

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

This agreement ends all plea discussions. No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X
## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

8

## XI

## **DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation.

| Date | |
|---|---|
| 1/30/15 | UNITED STATES OF AMERICA<br>DEBORAH R. GILG<br>United States Attorney<br><br>*/s/ Michael P. Norris*<br>MICHAEL P. NORRIS<br>ASSISTANT U.S. ATTORNEY |
| 1/30/15 | */s/ Michael P. Norris for*<br>KEITH BECKER<br>TRIAL ATTORNEY |
| 1/30/15 | */s/ Michael P. Norris for*<br>SARAH CHANG<br>TRIAL ATTORNEY |
| 1-30-2015 | */s/ Thomas Spencer*<br>THOMAS SPENCER<br>DEFENDANT |
| 1-30-15 | */s/ James J. Regan*<br>JAMES J. REGAN<br>COUNSEL FOR DEFENDANT |

9